

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RLI INSURANCE COMPANY,

    Plaintiff,

v.

    Case No. 1:14CV802

FIFTH THIRD BANCORP,

    Defendant.

J. BECKWITH

M.J. BOWMAN

### COMPLAINT FOR DECLARATORY JUDGMENT

RLI Insurance Company ("RLI") hereby brings a declaratory judgment action against Fifth Third Bancorp ("Fifth Third") and pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, seeks a declaration regarding Fifth Third's claim against RLI under two excess financial institution bonds.

### INTRODUCTION AND SUMMARY

1. Fifth Third, a banking corporation headquartered in Cincinnati, Ohio, submitted an insurance claim alleging that between July 1, 2010 and July 1, 2011, it discovered a loss it had previously sustained due to dishonest acts committed by Matthew P. Ross ("Ross"). Fifth Third alleges that its loss is covered under (a) a primary financial institution bond effective July 1, 2010 through July 1, 2011 (identified as Market Reference No. B0509QA048710 and referred to herein as "Primary Bond"); (b) a first excess financial institution bond effective July 1, 2010 through July 1, 2011 (identified as B059QA051310 and referred to herein as "1st Excess Bond"); and (c) the second excess financial institution bond effective July 1, 2010 through July 1, 2011 (identified as 81906760 and referred to herein as "2nd Excess Bond").

2. RLI denies that Fifth Third has established that Ross acted dishonestly. It brings this action for declaratory judgment because regardless of the merits of Fifth Third's allegations against Ross, Fifth Third cannot pursue a claim against RLI because Fifth Third knew about the conduct it characterizes as dishonest and knew about the fraud underlying its claim before RLI insured Fifth Third. As a result, Fifth Third cannot pursue a claim under the 1st Excess Bond or the 2nd Excess Bond and in the alternative, any claim against RLI is untimely.

3. RLI and Fifth Third disagree about whether Fifth Third can pursue a claim against RLI under the 1st Excess Bond and the 2nd Excess Bond and whether any claim thereunder is timely. Therefore, RLI asks this Court to enter a declaration that (1) Fifth Third cannot pursue a claim against RLI under the 1st Excess Bond and the 2nd Excess Bond because discovery occurred prior to the inception thereof; and (2) any claim against RLI is untimely.

## JURISDICTION AND PARTIES

4. Pursuant to 28 U.S.C. §1391(a)(2), venue is proper in this Court because a substantial part of the events or omissions giving rise to Fifth Third's claim occurred in this district and Fifth Third is headquartered in this district.

5. RLI is a corporation incorporated under the laws of the State of Illinois and maintains its principal place of business in Peoria, Illinois. It is a citizen of Illinois, as defined by 28 U.S.C. §1332.

6. Fifth Third is an Ohio banking corporation with its principal place of business in Cincinnati, Ohio. It is a citizen of Ohio, as defined by 28 U.S.C. §1332.

7. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1) because plaintiffs and defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

8. The Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201. An actual and substantial controversy exists between the parties regarding a series of issues, including (but not limited to) whether Fifth Third can pursue a claim against RLI.

## THE BONDS

9. Effective July 1, 2010, Fifth Third purchased the Primary Bond. (Exhibit 1). RLI does not participate in the Primary Bond.

10. Insuring Agreement A of the Primary Bond provides as follows:

(A)(1) **Loss resulting directly from dishonest or fraudulent acts**, including but not limited to the malicious damage to or destruction of Property covered under this bond, committed by an **Employee acting alone or in collusion with others.** Notwithstanding the foregoing, however, if some or all of the Insured's loss results directly or indirectly from Loans and/or Trading it is agreed that this bond covers only loss resulting directly from dishonest or fraudulent acts committed by an Employee with the **intent to make and which results in**:

(i) **a financial benefit** for the Employee, or

(ii) a financial benefit for another person or entity with whom the Employee committing the dishonest or fraudulent act was in collusion, provided that the Insured establishes that the Employee intended to participate in the financial benefit, or

(iii) the intentional transfer of funds or Property to the benefit of an innocent third party, committed by an Employee in the knowledge that such third party was not lawfully entitled to such funds or Property, and which Property is not lawfully recoverable by the Insured.

As used throughout this Insuring Agreement, financial benefit does not include any employee benefits including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

Notwithstanding the above, it is agreed that in determining the amount of loss payable under this Insuring Agreement, the Insured may include as part of such loss, bonuses, commission(s), or profit sharing paid to an Employee solely as the result of a dishonest or fraudulent act committed by the Employee.

11. Section 3 of the Primary Bond provides:

This bond applies only to loss first discovered by the Chief Risk Officer, Office of Risk Management, Office of General Counsel, Internal Audit, Loan Review or any Executive Officer of the first named Insured during the Bond Period. Discovery occurs at the earlier of the Chief Risk Officer, Office of Risk Management, Office of General Counsel, Internal Audit, Loan Review, or any Executive Officer of the first named Insured being aware of:

a. facts which a reasonable person would expect to result in a loss of a type covered by this bond, or

b. an actual or potential claim in which it is alleged that the Assured is liable to a third party,

regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of loss does not exceed the applicable Deductible Amount, or the exact amount or details of loss may not then be known.

It is agreed that all reference in this Section 1 of the Policy to "knowledge or discovery by the Insured" shall mean as outlined above.

12. Section 5 of the Primary Bond sets the deadline for pursuing a claim thereunder, submitting a proof of loss and filing a suit for coverage:

(a) At the earliest practicable moment, **not to exceed 90 days**, after the Chief Risk Officer, Office of Risk Management, Office of General Counsel, Internal Audit, Loan Review or any Executive Officer of the first named Insured's discovery of loss, the Insured shall give the Underwriter notice thereof. The Insured shall have 90 days after termination or cancellation of this bond as an entirety to report said loss.

(b) **Within 6 months after such discovery**, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.
\*\*\*
(d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 36 months from the discovery of such loss.

13. Effective July 1, 2010, Fifth Third purchased the 1st Excess Bond. (Exhibit 2). RLI's participation in the 1st Excess Bond is $5,000,000 part of $25,000,000.

14. The First Excess Bond provides as follows:

This Policy is subject to the same conditions, limitations and other terms (except as regards the premium, the amount and limits of liability and the renewal agreement, if any,

4

and except as otherwise provided herein) as are contained in or may be added to the Policy(ies) of the Primary Insurer(s).

Any amendment or alteration to the Policy(ies) of the Primary Insurer(s) including but not limited to any extension in the scope or nature of the coverage afforded, shall be binding hereunder.

It is a condition of this Policy that the Policy(ies) of the Underlying Insurer(s) shall be maintained in full force and effect during the currency of this Policy except for the partial erosion or complete exhaustion of any aggregate limit(s) contained therein solely by payment of claims.

* * *

II. (A) The Underwriters' liability to pay under this Policy shall attach only when the Underlying Insurer(s) shall have paid or have been held liable to pay, the full amount of the Underlying Limit(s) shown in Item 6 of the Schedule and then for no more than the Limit of Liability shown in Item 5 of the Schedule subject, however, to Condition 3 of this Policy.

15. Effective July 1, 2010, Fifth Third purchased the 2nd Excess Bond. (Exhibit 3). RLI's participation in the 2nd Excess Bond is $7,500,000 part of $25,000,000.

16. Subject to its terms and conditions, the 2nd Excess Bond covers

Loss which would have been paid under the Primary Bond but for the fact the loss exceeds the Deductible Amount.

Coverage under this bond shall follow the terms and conditions of the Primary Bond, except with respect to:

a. The coverage exceptions in ITEM 6. of the DECLARATIONS; and

b. The limits of liability as stated in ITEM 2. and ITEM 3. of the DECLARATIONS.

With respect to the exceptions stated above, the provisions of this bond shall apply.

17. The 2nd Excess Bond provides as follows:

This bond applies only to loss first discovered by the ASSURED during the BOND PERIOD. Discovery occurs at the earlier of the ASSURED being aware of:

a. facts which may subsequently result in a loss of a type covered by this bond, or

b. an actual or potential claim in which it is alleged that the ASSURED is liable to a third party,

regardless of when the act or acts causing or contributing to such loss occurred, even though the amount of loss does not exceed the applicable Deductible Amount, or the exact amount or details of loss may not then be known.

5

## FIFTH THIRD'S INSURANCE CLAIM

18. Fifth Third hired Ross as a Vice President in November 2002.

19. In September 2007, Fifth Third established a $100 million loan facility for Concord Capital Management LLC ("Concord," formerly known as Concord Capital Management LLC).[1] The facility, called "Life Insurance Premium Financing Program II, LLC" ("LIPF II"), supported Concord's premium finance product, Ultra.

20. Under LIPF II and Ultra, Concord made premium finance loans to irrevocable life insurance trusts established by proposed insureds. The insureds and the trusts entered into Loan and Security Agreements with Concord pursuant to which the trust, as the owner of the life insurance policy, would borrow the premium, and any fees payable in connection with the origination of the policy, from Concord. The insured would provide a limited guarantee of the loan amount. Concord sold a 100% participation interest in the loan to the LIPF II facility while Fifth Third advanced loan fundings to LIPF II for life insurance policy premiums and fees and expenses payable in connection with the loan fundings.

21. In order to be eligible for financing, the proposed insured was required to meet certain requirements (i.e., as to age, net worth and medical condition) and Concord was required to provide certain documentation (including a life expectancy evaluation, a model funding analysis and a life settlement valuation). LaSalle acted as the collateral/servicing agent. In that capacity, LaSalle reviewed each loan request to determine if the insured was eligible for the program.

---

[1] Concord and its associated entities were previously known under the name "InsCap." They are referred herein as "Concord" collectively.

22. Commencing October 11, 2007 and continuing through August 10, 2009, Concord (through its owners, principal officers and insurance agents and intermediaries) purportedly sold 78 life insurance policies to 51 individuals. These transactions, according to Fifth Third, were fraudulent.

23. On February 8, 2011, Fifth Third submitted notice of a claim alleging that Concord created and funded fraudulent policies in order to generate revenue for Concord, its owners and its network of brokers/agents.

24. Fifth Third submitted a Proof of Loss on October 14, 2011, seeking coverage under the Primary Bond, the 1st Excess Bond and the 2nd Excess Bond.

25. In its Proof of Loss, Fifth Third alleged that Ross colluded with certain Concord's executives, including co-owners Ira Brody, Edward Netherland and Harish Raghavan (collectively, "Concord Insiders"). Fifth Third alleges that Ross and the Concord Insiders "created, operated and manipulated" LIPF II to receive "undisclosed and illegal financial benefits."

26. Fifth Third alleges that Ross and the Concord Insiders manipulated LIPF II by (among other things) approving ineligible fundings (i.e., approving fundings to support the payment of life insurance premiums that were ultimately "ineligible" because the trusts being funded had no valid life insurance policy in effect and were thus under-collateralized); and approving draws to pay excessive and unauthorized fees.

27. Fifth Third claims a loss in excess of $100 million.

**RLI'S POSITION ON ROSS' CONDUCT**

28. Fifth Third has failed to prove its allegations, including its allegation that Ross colluded with Concord and acted dishonestly.

7

29. Fifth Third's allegations of dishonesty are refuted by the fact that Ross enforced the funding rules of the LIPF II facility and demanded compliance from Concord; promoted transparency in the Ultra program; proposed and executed a training program that trained multiple colleagues to review and approve funding requests; advocated for Fifth Third's interests at the expense of friction with Concord; demanded that Concord provide a stronger guarantor for the LIPF II facility; and imposed a freeze on any funding in August 2009 (refusing to grant funding or re-negotiate the LIPF II facility until Concord reconciled its current loans in default).

30. RLI, therefore, disputes that Ross acted dishonestly, that he colluded with Concord or that Fifth Third can establish a loss covered by the Primary Bond.

## COUNT I: DECLARATORY JUDGMENT
## DISCOVERY OCCURRED PRIOR TO INCEPTION OF BONDS

31. RLI incorporates the allegations by reference in Paragraphs 1 to 30 as though fully stated herein.

32. RLI asks this Court to declare that Fifth Third cannot pursue a claim against RLI because discovery occurred prior to the inception of the 1st Excess Bond or the 2nd Excess Bond.

33. Fifth Third knew about the conduct it now characterizes as dishonest prior to the inception of the 1st Excess Bond and the 2nd Excess Bond. Therefore, regardless of the merits of Fifth Third's allegations, it cannot pursue a claim thereon.

34. For example, Fifth Third alleges that Ross dishonestly approved ineligible fundings. RLI disputes that conclusion, but by March 2009, Fifth Third knew that Ross had approved the ineligible fundings. Ross disclosed the ineligible fundings to executive officers of Fifth Third in a March 4, 2009 email and confirmed in that email that they discussed the ineligible fundings in February 2009.

Case: 1:14-cv-00802-TSB-SKB Doc #: 1 Filed: 10/10/14 Page: 9 of 11 PAGEID #: 9

35. Second, Fifth Third alleges that Concord submitted forged documents. Fifth Third knew that the loans in the Ultra program contained these forgeries by May 27, 2009. On May 27, 2009, Ross sent an executive officer of Fifth Third an email noting that a report prepared by Skadden Arps disclosed the use of forgeries and advising him that executory and supporting documents on a trust were likely forged and falsified. On May 28, 2009, an executive officer of Fifth Third circulated an email within Fifth Third reporting instances of forgery.

36. .

37. Third, Fifth Third alleges Ross dishonestly allowed Concord to transfer $2 million from the Oakley trust to an account belonging to Raghavan. Fifth Third knew of the transfer before July 1, 2009. On April 27, 2009, an executive officer of Fifth Third sent an email to Ross and another executive officer of Fifth Third, requesting that the $2 million in Raghavan's account be returned to Concord's operating account.

38. On or about May 8-14, 2009, an executive officer of Fifth Third published an internal memo (dated May 9, 2009), detailing issues with the Ultra program and LIPF II facility. In the memo, the officer described transfers from the Oakley trust and the fraud perpetrated by Concord. At the conclusion of his May 9, 2009 memo, the officer recommended a detailed investigation into fraud perpetrated at Concord, including fraud related to the ineligible fundings.

39. In or around June 2009, Fifth Third first applied for insurance from RLI. Prior to the issuance of the 1st Excess Bond or the 2nd Excess Bond, Fifth Third did not disclose to RLI the conduct it now characterizes as dishonest, the submission of forged documents or the fraud by Concord.

40. The 1st Excess Bond and the 2nd Excess Bond apply to loss first discovered during the Bond Period. Fifth Third knew about the conduct it characterizes as dishonest, knew

9

about fraud by Concord and knew about forgeries prior to the inception of the 1st Excess Bond and the 2nd Excess Bond and thus, cannot recover from RLI.

41.     RLI thereby asks the Court to declare that Fifth Third cannot pursue a claim against it under the 1st Excess Bond and the 2nd Excess Bond because discovery occurred prior to the inception thereof.

## COUNT II: DECLARATORY JUDGMENT
## ANY CLAIM RELATED TO ROSS' ALLEGED DISHONESTY IS UNTIMELY

42.     RLI incorporates Paragraphs 1 to 41 by reference as though fully set forth herein.

43.     Pursuant to Section 5 of the Primary Bond, Fifth Third owes a duty to provide notice of a claim within 90 days of discovery, to submit a proof of loss within six months and to initiate any legal proceedings within three-years.

44.     Fifth Third submitted a Notice of Claim on February 8, 2011. It submitted a Proof of Loss on October 14, 2011.

45.     Fifth Third and RLI entered into an agreement to toll the suit limitation ("Tolling Agreement"). The Tolling Agreement provides that any legal proceeding brought by Fifth Third on or before November 30, 2014 will be treated as brought on June 19, 2013, when Fifth Third first requested an extension of the suit limitation clause.

46.     As documented in the allegations (paras 33-38) above, Fifth Third knew about the conduct it now characterizes as dishonest more than thirty-six months prior to June 19, 2013 (e.g prior to June 19, 2010). Fifth Third cannot, therefore, pursue a claim against RLI.

47.     In May 2010, Fifth Third received a summons from the Supreme Court of New York, which notified Fifth Third of Concord's intent to bring suit for fraud, breach of contract, and other causes of action related to LIPF II and Ultra. Fifth Third's legal department was aware of Concord's Summons and Notice as early as June 7, 2010.

48. RLI thereby asks the Court to declare that any claim that Fifth Third may bring that is related to Ross' alleged dishonesty is untimely and therefore, that RLI owes no coverage to Fifth Third.

**WHEREFORE**, RLI Insurance Company prays for the entry of a judgment in its favor and asks this Court to declare that Fifth Third cannot pursue a claim against RLI, because discovery occurred prior to the inception of the 1st Excess Bond and the 2nd Excess Bond, and that any claim against RLI is time barred, and for any other relief the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues so triable.

Dated this 10th day of October, 2014.

Respectfully submitted,

| | |
|---|---|
| /s/Robert W. Hojnoski | Scott L. Schmookler |
| Robert W. Hojnoski (0070062) | Regina A. Ripley |
| Carrie M. Starts (0083922) | JI-YEON SUH |
| Nathan A. Lennon (0091743) | GORDON & REES LLP |
| REMINGER CO. LPA | One North Franklin |
| 525 Vine Street, Suite 1700 | Suite 800 |
| Cincinnati, Ohio 45202 | Chicago, IL 60606 |
| Telephone: (513) 721-1311 | Telephone: (312) 565-1400 |
| Facsimile: (513) 721-2553 | Facsimile: (312) 565-6511 |
| RHOJNOSKI@REMINGER.COM | SSCHMOOKLER@GORDONREES.COM |
| CSTARTS@REMINGER.COM | RRIPLEY@GORDONREES.COM |
| NLENNON@REMINGER.COM | JSUH@GORDONREES.COM |
| **TRIAL COUNSEL FOR PLAINTIFF, RLI INSURANCE COMPANY** | **CO-COUNSEL FOR RLI INSURANCE COMPANY (PENDING *PRO HAC VICE* ADMISSION)** |