# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| RLI INSURANCE CO., | Case No. 1:14-cv-802 |
| Plaintiff | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| FIFTH THIRD BANKCORP, | |
| Defendant. | |

………………………………………………………

| | |
|---|---|
| FIFTH THIRD BANCORP, et al., | Case No. 1:14-cv-869 |
| Plaintiffs, | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S, et al., | |
| Defendants. | |

## MEMORANDUM ORDER

The above two cases have been consolidated for purposes of discovery and pretrial proceedings, without prejudice to any future motion to consolidate for trial.[1] (*See* Doc. 27 in Case No. 14-cv-802). Currently before the undersigned are two motions relating to pretrial proceedings: (1) Defendants' Sealed Motion for Protective Order or to Stay Discovery and Bifurcate Plaintiff's "Bad Faith Claim" in Case No. 14-cv-869[2] and (2) Plaintiff RLI's Motion for Joinder in Certain Underwriters' Motion for

---

[1]To date, RLI has opposed consolidation of the cases for trial, and separate trial dates have been set.

[2]Although the Defendants' motion was filed under seal pursuant to an existing protective order, the undersigned finds no need to file this Memorandum Order under seal, because it discloses no confidential or protected information.

Protective Order and in the Alternative to Stay and Bifurcate Plaintiffs' "Bad Faith Claim" in Case No. 14-cv-802.

   I.   **Background**

Case No. 1:14-cv-802 was first filed by RLI Insurance Company ("RLI"), one of several insurers participating in a financial bond policy issued to Fifth Third Bancorp ("Fifth Third"). RLI's complaint seeks a declaratory judgment that it owes nothing under its bond due to the fact that Fifth Third was aware of the loss prior to the purchase of the bond, and failed to timely present its claim. Fifth Third filed a counterclaim for breach of contract, seeking coverage under the bond. A month after RLI initiated its declaratory judgment action, Fifth Third filed Case No. 14-cv-869 against a number of other insurers that also issued and/or participated in additional financial bonds purchased by Fifth Third, and under which Fifth Third also seeks to recover.

Both cases arise from the actions of a Fifth Third loan officer, Matthew Ross, who was formerly employed in the bank's structured finance group. Fifth Third alleges that it has suffered losses in excess of $100 million due to Mr. Ross's misconduct, exceeding the policy limits of all of the financial bonds issued by the various entities. As the presiding district judge previously noted in consolidating the two cases for pretrial proceedings, the Defendants in Case No. 14-cv-869 "raise many defenses similar to those raised by RLI, such as lack of timely notice of loss, and Fifth Third's discovery of the fraudulent conduct prior to the inception of the policy period." (Case No. 1:14-cv-802, Doc. 27 at 3).

On March 12, 2015, the Court entered a joint Calendar Order for both cases, providing a September 30, 2015 deadline for motions to amend the pleadings, and a dispositive motion deadline of October 3, 2016 - two months prior to the expiration of

the fact discovery deadline. By notational order of February 19, 2016, the undersigned amended the Calendar Order and extended the prior expert disclosure deadlines, with all discovery to be completed by February 3, 2017. However, that Order specifically stated that the dispositive motion deadline of October 3, 2016 "remains unchanged."[3] On April 25, 2016, the undersigned granted a second agreed motion by all parties to extend deadlines to disclose their experts, again without modification of the dispositive motion deadline.

On March 4, 2016, Defendants in Case No. 1:14cv-869, Certain Underwriters at Lloyd's subscribing to policy numbers B0509QA048710 and B0509QA051310 ("Lloyds"), AXIS Insurance Company ("AXIS"), and Federal Insurance Company ("Federal") (collectively referred to as "Underwriters"), filed a motion seeking a protective order or, in the alternative, to stay discovery and bifurcate Plaintiff's Bad Faith Claim. On March 17, 2016, Plaintiff RLI filed a similar motion, essentially joining the Underwriters' motion, in Case No. 1:14-cv-802.[4] Fifth Third filed responses to both motions, to which the moving parties filed reply memoranda. For the convenience of this Court, all of the moving parties (Underwriters and the Second Excess Insurance Carriers in Case No. 14-cv-869 and RLI in Case No. 14-cv-802) are collectively referred to as "the Insurers" for purposes of the pending motions. For the reasons that follow, the undersigned finds bifurcation of discovery to be appropriate.

---

[3] The dispositive motion deadline is approximately 6 months prior to the presently set trial dates. Case No. 1:14-cv-802 is currently scheduled for trial on April 10, 2017, while Case No. 1:14-cv-869 is presently scheduled for April 24, 2017.

[4] On April 1, 2016, Continental Insurance Company, Fidelity and Deposit Insurance Company of Maryland, and St. Paul Mercury Insurance Company (collectively, the "Second Excess Insurance Carriers") also joined the Underwriters' motion in Case No. 1:14-cv-869, as well as RLI's motion in Case No. 1:14-cv-802. (*See* Doc. 58 in Case No. 1:14-cv-869).

3

II.     Analysis

Relevant to the pending discovery and bifurcation dispute, Fifth Third's pleadings set forth a single "Breach of Contract" claim against all of the Insurers, RLI in Case No. 14-cv-802 and the Underwriters in Case No. 14-cv-869.  (*See e.g.*, 14-cv-802, "Count I, BREACH OF CONTRACT" set forth in Doc. 13, ¶¶ 18-22,  and 14-cv-869, "Count I, BREACH OF CONTRACT" set forth in Doc. 24, ¶¶33-37).   However, within the numbered paragraphs under each breach of contract claim is a single allegation that the Insurers have "acted in bad faith in breaching their contractual obligations to pay …under the Bonds by failing to acknowledge the overwhelming evidence of dishonest and fraudulent acts submitted…in support of [Fifth Third's] claims." (*Id.*, Doc. 13 at ¶21; Doc. 24 at ¶36).   Aside from the inclusion of the referenced allegation of bad faith within the breach of contract claims, and a second cursory (and ambiguous) reference in the factual allegations, no standalone tort claim of bad faith has been pled against any of the Insurers.[5]

Fifth Third seeks no damages other than those recoverable under the alleged breach of contract claims, the "insured losses" up to the policy limits.  However, Fifth Third points out that under Ohio law, an award of attorney's fees may be made in cases that involve a bad faith breach of contract claim, so long as the bad faith conduct is "sufficiently egregious."  *See, e.g., Avis Rent A Car Systems, LLC v. City of Dayton*, Case No. 3:12-cv-399, 2015 WL 5636897 at *5 (S.D. Ohio Sept. 25. 2015); *see also SST Bearing Corp. v. Twin City Fan Cos., LTD.*, 2012 WL 2053315 (Ohio Ct. App. First Dist. June 8, 2012).  In *Avis,* Judge Rice recognized that unlike a tort claim for bad faith,

---

[5]Fifth Third cites cases that discuss the separate tort claim of bad faith under Ohio law, which is distinct from the type of bad faith allegation that is included in the context of Fifth Third's breach of contract claim. The undersigned does not read Fifth Third's pleadings as alleging a separate tort claim for bad faith under Ohio law.

"a bad-faith breach of contract claim is not cognizable under Ohio law as a free-standing cause of action," even though it "may justify an award of attorneys' fees as costs." *Id.*

The undersigned is not persuaded by Fifth Third's attempt to re-characterize its pleading as also asserting a separate bad faith tort claim, given that the counterclaim in 1:14-cv-802 and amended complaint in 1:14-cv-869 clearly set forth only a single "breach of contract" claim and only briefly reference "bad faith" within that claim. In addition to Fifth Third's discovery responses and calculation of damages, which are more consistent with that view, (*see, e.g.*, Doc. 60-1), it is reasonable to infer that the pleadings were drafted with the same intention and high level of skill and sophistication that the Court has observed throughout this litigation, given the large commercial entities involved as well as high dollar value of the bonds at issue. However, even if the trial judge disagrees or permits Fifth Third to amend (well beyond the deadline for such amendment) to include a separate bad faith tort claim, the undersigned still would find bifurcation of discovery on that claim to be appropriate.

Based upon the referenced allegation of bad faith, Fifth Third seeks very broad discovery of many documents that otherwise would be subject to privilege and/or potentially irrelevant to the underlying breach of contract claim. The Insurers' motions seek either a protective order or a stay and bifurcation of discovery that would include the production of claims files, including otherwise privileged material, RLI's attorney-client communications,[6] privileged communications with other insurers, and fee bills for services rendered by outside counsel. In addition, the Insurers seek protection from

---
[6]RLI complains that by seeking such discovery, Fifth Third is reneging on an agreement, made via email dated July 2015, that Fifth Third would not seek communications between RLI and RLI's outside litigation counsel, Scott Schmookler -the same counsel who represents RLI in this action. Fifth Third argues that it should not be held to that "agreement" because at the time, Fifth Third alleges it was "unaware that Mr Schmookler and his firm…had provided pre-suit coverage advice in denying Fifth Third's bond claim." (Doc. 49 at 7). While RLI questions that representation, there is no need to further review the issue at this time.

disclosure to Fifth Third of their internal reserves related to the Fifth Third Claim, and object to disclosure of claims submitted by other insureds over a four-year period.

There is no question that much of the discovery sought by Fifth Third from the Insurers may be relevant to issues of bad faith under Ohio law, regardless of whether the bad faith allegation is construed as a separate tort claim or merely as a component of the breach of contract claim. In the seminal Ohio case of *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001), the Ohio Supreme Court held that a bad faith claim against an insurer creates an exception to traditional privileges under Ohio law,[7] such that the insured party was entitled to discovery of such otherwise privileged material from his insurer. However, many (if not most) courts since *Boone* have imposed limited stays of discovery on bad faith claims in similar contexts, in part to prevent the insurer from being inhibited in its ability to defend the underlying breach of contract claim based upon the disclosure of attorney-client communications and/or attorney work product. *See DeVito v. Grange Mut. Cas. Co.,* 996 N.E.2d 547 (Ohio Ct. App. 8th Dist. 2013) (reversing, as abuse of discretion, trial court's denial of stay of discovery for bad faith claim pending resolution of breach of contract claim); *Garg v. State Automobile Mut. Insur. Co.*, 800 N.E.2d 757, 155 Ohio App. 3d 258 (Ohio Ct. App., 2d Dist. 2003).

The undersigned concludes that a stay of discovery and bifurcation on any bad faith issues (whether or not construed by the trial judge as a separate tort claim) is advisable in the above-captioned cases. In addition to the privilege issue, the undersigned is persuaded that a bifurcation of discovery on any "bad faith" issues

---

[7]The facts of *Boone* involved only the attorney-client privilege, but other Ohio cases have expanded the *Boone* waiver to work product materials. In a case cited by Fifth Third, *Deck v. Chubb Nat'l Ins. Co.*, 2015 WL 5954584 (S.D. Ohio Oct. 14, 2015), adopted at 2015 WL 6872937 (S.D. Ohio Nov. 9, 2015), Magistrate Judge Litkovitz noted that unlike the attorney-client privilege, which is governed by state law, the question of whether claims file documents are protected as work product is governed by federal law. Judge Litkovitz did not find *Boone* to apply to work product.

furthers the interests of judicial economy. Thus, the undersigned will grant the Insurers' motions to stay and/or bifurcate discovery on the bad faith issues until at least following the filing of any dispositive motions on the underlying breach of contract claims. *Accord Warren v. Federal Ins. Co.*, 358 Fed. Appx. 670 at *6 (6th Cir. 2009) (affirming bifurcation with stay of discovery on bad faith claim); *Smith v. Allstate Insur. Co.*, 403 F.3d 401 (6th Cir. 2005) (affirming stay of discovery on bad faith claim while contract claim was pending); *Ferro Corp. v. Continental Cas. Co.,* 2008 WL 5705575 (N.D. Ohio Jan. 7, 2008) (finding bifurcation of discovery and trial to be appropriate in case involving numerous lawsuits and coverage claims against multiple insurers; *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 4365695 (S.D. Ohio, Dec. 12, 2007) (affirming order of magistrate judge to bifurcate discovery and trial on bad faith claim that magistrate judge deemed was not an independent cause of action); *Libbey Inc. v. Factory Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 45160 (N.D. Ohio June 21, 2007) (bifurcating discovery and trial on bad faith claim).

Although the Insurers also seek bifurcation of any bad faith issues for purposes of trial,[8] that issue is reserved to the presiding trial judge. It is likely that the trial judge will be in a better position to review the potential bifurcation or consolidation of trial concerning bad faith issues following the disposition of any dispositive motions on the underlying breach of contract claims. Therefore, the undersigned will deny, without prejudice to renew, that portion of the Insurers' motion.

In objecting to the proposed bifurcation of discovery, Fifth Third makes much of the fact that in the parties' Rule 26(f) discovery plans, the Insurers affirmatively agreed that discovery would need to be conducted on all issues raised, and that discovery need

---

[8]Bifurcation is governed by federal law in diversity cases. Rule 42(b), Fed. R. Civ. P., permits a federal court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize."

not be bifurcated. Likewise, the issue of bifurcation did not come up during initial pretrial conferences. Fifth Third also complains that RLI already has engaged in some discovery concerning the issue of bad faith, including a portion of the discovery served by RLI on Fifth Third, and therefore should be "estopped from refusing to participate" in Fifth Third's attempt to delve more deeply into issues relating to bad faith. Having examined the record, the undersigned does not agree. Fifth Third significantly overstates the amount of "bad faith" discovery conducted to date, as well as the scope of the Insurers' alleged Rule 26(f) "agreement." Viewing the course of this litigation as a whole, the undersigned finds the parties' prior Rule 26(f) agreements should not be used to foreclose the extremely broad "bad faith" discovery sought by Fifth Third at this point in time.

The Insurers argue that if Fifth Third cannot prove its underlying breach of contract claims in this case, then no separate action for bad faith can be maintained by Fifth Third. Although the final arbiter of claims and defenses will be the trial judge assuming that the parties file dispositive motions, the undersigned finds the Insurers' argument to be a persuasive factor weighing in favor of bifurcation of discovery at this stage.

As stated above, the undersigned finds that Fifth Third has pleaded bad faith only within the context of its breach of contract claims, and not as a separate tort claim under Ohio law. Fifth Third makes much of the fact that "in theory," a bad faith tort claim can be established independent of a breach of contract claim. *Poneris v. Pennsylvania Life Ins. Co.*, 2007 WL 3047232 at *2 (S.D. Ohio Oct. 18, 2007). It is true that "Ohio law recognizes that bad faith in the adjustment of an insurance claim may exist without a valid claim for coverage; 'an insurer has a duty to act in good faith in the processing and

8

payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort irrespective of any liability arising from breach of contract.'" *Broad v. North Pointe Insur. Co.*, 2014 WL 1097925 at *10 (N.D. Ohio March 19, 2014) (internal citations omitted) (acknowledging *possibility* of separate tort claim under Ohio law but still finding that defendant was entitled to summary judgment on "ancillary" bad faith claim in light of failure of breach of contract claim). The theoretical viability of such a bad faith tort claim under Ohio law does not weigh against bifurcation of discovery on the record presented.[9] Instead, bifurcation of discovery clearly serves the interests of justice in this case.

Millions of pages have already been exchanged between the parties on the breach of contract claim (with limited bad faith overlap) to date. The parties already have sought the intervention of this Court to resolve discovery-related disputes. The complexity of discovery to date, coupled with the firm dispositive motion deadline of October 3, 2016, also favors staying the extremely broad expansion of discovery that Fifth Third seeks to support its "bad faith" allegations.[10]

### III. Conclusion and Order

Accordingly, IT IS ORDERED:

1. Defendants' Sealed motion for Protective Order or to Stay Discovery and Bifurcate Plaintiff's "Bad Faith Cliam" in Case No. 14-cv-869 (Doc. 53, joined by the Second Excess Insurance Carriers in Doc. 58) is GRANTED IN PART

---

[9] It is unclear whether any Ohio case exists in which a plaintiff has succeeded on such a claim, notwithstanding the small number of cases acknowledging the possibility of that independent tort claim. However, as illustrated by the cases cited herein, bifurcation is often viewed as the preferred course of action even when an independent tort claim for bad faith has been asserted.

[10] Fifth Third repeatedly emphasizes that it intends to seek any and all information from all Insurers that "may cast light" on whether the Insurers' alleged breach of contract and denial of coverage on the bonds was in bad faith.

insofar as discovery that relates to Plaintiff's bad faith allegations is STAYED until October 3, 2016, the current dispositive motion deadline;

2. Plaintiff RLI's motion in Case No. 14-cv-802 to join Certain Underwriters' Motion for Protective Order and in the Alternative to Stay and Bifurcate (Doc. 44) is GRANTED IN PART consistent with the above paragraph;

3. In all other respects, the Insurers' motions (Docs. 53 and 58 in Case No. 14-cv-869, and Doc. 44 in Case No. 14-cv-802) are DENIED. However, the denial is without prejudice to the Insurers to renew their motion for bifurcated trials, if necessary, after initial dispositive motions are resolved.

      *s/ Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge