# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | Civil Action No. **1:14cv802** |
| | : | |
| Plaintiff | : | Judge: **Sandra S. Beckwith** |
| | : | Magistrate: **Stephanie K. Bowman** |
| vs. | : | |
| | : | |
| **FIFTH THIRD BANCORP** | : | |
| | : | |
| Defendant | : | |

## ANSWER, AFFIRMATIVE DEFENSES, FIRST AMENDED COUNTERCLAIM AND DEMAND FOR JURY TRIAL

Fifth Third Bancorp ("Fifth Third") hereby states the following as its Answer and Affirmative Defenses to the Complaint brought by RLI Insurance Company ("RLI") and its First Amended Counterclaim against RLI, as follows:

## ANSWER
### INTRODUCTION AND SUMMARY

1. Fifth Third admits that it submitted an insurance claim under the Primary Bond, 1st Excess Bond and 2nd Excess Bond based upon a loss it discovered during the period of the Bonds due to dishonest and fraudulent acts committed by Ross. In addition, Fifth Third states that it timely submitted its Proof of Loss, as supplemented, to RLI and that the Proof of Loss speaks for itself.

2. RLI's allegation that it denies that Fifth Third has established that Ross acted dishonestly does not require a response. Fifth Third has established that Ross acted dishonestly and that such actions directly caused a loss covered by the Bonds. As a result, Fifth Third is filing its Counterclaim herein and has also filed a Complaint before this Court against the other

1

insurers under the Bonds (designated as Case No. 1:14CV869) seeking payment for its losses. Fifth Third denies that it cannot pursue a claim against RLI under the 1st Excess Bond or 2nd Excess Bond or that any such claim against RLI is untimely. Fifth Third further denies that it knew of the dishonest conduct and fraud underlying its claim based on the dishonest and fraudulent acts of Ross before RLI insured Fifth Third. Fifth Third discovered in 2011 that it had sustained a loss of a type covered by the Bonds based upon the dishonest and fraudulent acts of Ross and timely reported its claim to RLI and the other insurers under the Bonds.

3. Fifth Third denies that this Court should enter a declaration that Fifth Third cannot pursue a claim against RLI under the 1st Excess Bond and the 2nd Excess Bond or that any such claim against RLI is untimely and, by way of further answer, states that no declaratory ruling should be made by this Court until Fifth Third has had an opportunity to have its claims under the Counterclaim herein and the above-referenced Complaint adjudicated. In addition, Fifth Third denies that it cannot pursue a claim against RLI under the 1st Excess Bond or 2nd Excess Bond or that any such claim against RLI is untimely. Fifth Third further denies that it knew of the dishonest conduct and fraud underlying its claim based on the dishonest and fraudulent acts of Ross before RLI insured Fifth Third. Fifth Third discovered in 2011 that it had sustained a loss of a type covered by the Bonds based upon the dishonest and fraudulent acts of Ross and timely reported its claim to RLI and the other insurers under the Bonds.

**JURISDICTION AND PARTIES**

4. Fifth Third admits the allegations contained in Paragraph 4 that venue is proper in this Court.

5. Fifth Third admits the allegations contained in Paragraph 5.

6. Fifth Third admits the allegations contained in Paragraph 6.

7. Fifth Third admits the allegations contained in Paragraph 7 and that this Court has jurisdiction over this lawsuit.

8. Fifth Third denies the allegations contained in Paragraph 8 for the reason that RLI's claims and Fifth Third's defenses to RLI's claims require determinations of fact to be made in adjudicating Fifth Third's Counterclaim and the above-referenced Complaint and that this Court should not entertain a declaratory judgment action until Fifth Third has had an opportunity to have its claims under the Counterclaim herein and the above-referenced Complaint adjudicated.

9. Fifth Third admits the allegations contained in Paragraph 9.

## THE BONDS

10. Fifth Third neither admits nor denies the allegations contained in Paragraph 10 for the reason that the Primary Bond speaks for itself and it must be read as a whole.

11. Fifth Third neither admits nor denies the allegations contained in Paragraph 11 for the reason that the Primary Bond speaks for itself and it must be read as a whole.

12. Fifth Third neither admits nor denies the allegations contained in Paragraph 12 for the reason that the Primary Bond speaks for itself and it must be read as a whole.

13. Fifth Third admits the allegations contained in Paragraph 13.

14. Fifth Third neither admits nor denies the allegations contained in Paragraph 14 for the reason that the 1st Excess Bond speaks for itself and it must be read as a whole.

15. Fifth Third admits the allegations contained in Paragraph 15.

16. Fifth Third neither admits nor denies the allegations contained in Paragraph 16 for the reason that the 2nd Excess Bond speaks for itself and it must be read as a whole.

17. Fifth Third neither admits nor denies the allegations contained in Paragraph 17 for the reason that the 2nd Excess Bond speaks for itself and it must be read as a whole.

## FIFTH THIRD'S INSURANCE CLAIM

18. Fifth Third admits the allegations contained in Paragraph 18.

19. Fifth Third admits the allegations contained in Paragraph 19.

20. Fifth Third admits that while the allegations in Paragraph 20 state a generally accurate summary of LIPF II and Ultra, the documents establishing LIPF II and Ultra speak for themselves.

21. Fifth Third admits that while the allegations in Paragraph 21 state a generally accurate summary of LIPF II and Ultra, the documents establishing LIPF II and Ultra speak for themselves. By way of further answer, LaSalle Bank acted as the initial servicer under LIPF II and was succeeded by Bank of America and later Wilmington Trust; and, further, Fifth Third lacks knowledge to either admit or deny the allegation that "LaSalle reviewed each loan request to determine if the insured was eligible for the program".

22. Fifth Third admits the allegations contained in Paragraph 22 and further states that it discovered Ross' participation in the fraudulent transactions in 2011.

23. Fifth Third admits the allegations contained in Paragraph 23 and by way of further answer states that Fifth Third's Notice of Claim also alleged and was based upon its discovery of dishonesty and fraudulent acts on the part of Ross in collusion with Concord.

24. Fifth Third admits the allegations contained in Paragraph 24 and by way of further answer states that it has supplemented the Proof of Loss on numerous occasions since October 14, 2011, with additional information and documents in support of its claim.

25. Fifth Third admits the allegations contained in Paragraph 25 and by way of further answer states that the Proof of Loss was filed based upon Fifth Third's discovery of Ross' collusion with the Concord Insiders and benefit received from such collusion which gave rise to a covered loss under the Bonds.

26. Fifth Third admits the allegations contained in Paragraph 26 and by way of further answer states that the Proof of Loss was filed based upon Fifth Third's discovery of Ross' collusion with the Concord Insiders and benefit received from such collusion which gave rise to a covered loss under the Bonds.

27. Fifth Third admits the allegation contained in Paragraph 27.

### RLI'S POSITION ON ROSS' CONDUCT

28. Fifth Third denies the allegations contained in Paragraph 28 for the reason said allegation is untrue.

29. Fifth Third denies the allegations contained in Paragraph 29 for the reason said allegations are untrue.

30. Fifth Third acknowledges that RLI disputes its claim but Fifth Third denies that it has not shown that Ross acted dishonestly, colluded with Concord Insiders or that Fifth Third can establish a loss covered by the Primary Bond. Fifth Third believes that RLI's dispute of Fifth Third's claim is in bad faith, in that Fifth Third has provided ample evidence that Ross acted dishonestly, colluded with Concord Insiders and benefited from such acts and collusion, and therefore has established a loss of the type covered by the Bonds.

### COUNT I: DECLARATORY JUDGMENT
### DISCOVERY OCCURRED PRIOR TO INCEPTION OF BONDS

31. Fifth Third incorporates its answers to Paragraphs 1 through 30 as though fully stated herein.

32. Fifth Third denies that this Court should declare that Fifth Third cannot pursue a claim against RLI based upon RLI's allegation that discovery occurred prior to the inception of the 1st Excess Bond or the 2nd Excess Bond for the reason that RLI's allegations are untrue.

33. Fifth Third denies the allegations contained in Paragraph 33 for the reason said allegations are untrue. Fifth Third did not discover the dishonest conduct of Ross until 2011, at which time Fifth Third promptly filed its Notice of Claim based upon its discovery of a loss of a type covered by the Bonds.

34. Fifth Third denies the allegations contained in Paragraph 34 for the reason said allegations are untrue. Fifth Third did not discover Ross' dishonesty in connection with LIPF II until 2011 when it filed its Notice of Claim. Fifth Third's knowledge that ineligible fundings had been made and Ross' alleged "disclosure" as referenced in Paragraph 34 do not constitute knowledge of dishonesty or fraud on the part of Ross, which Fifth Third did not acquire until 2011 when Fifth Third promptly filed its Notice of Loss based upon knowledge of a loss of a type covered by the Bonds.

35. The allegations contained in Paragraph 35 refer to written documents that speak for themselves, and Fifth Third denies the allegations in Paragraph 35 to the extent they are inconsistent therewith. The allegations contained in Paragraph 35 that state RLI's legal conclusions as to the meaning and effect of the documents do not require a response. By way of further answer, Fifth Third states that all information provided by Ross with respect to alleged forgeries in the Ultra program stated that the forgeries had been committed by Concord's insider and former CFO, Ira Brody, and Fifth Third further states that Ross concealed his knowledge of the forgeries in providing such information. Any knowledge which Fifth Third may have acquired of forgeries in the Ultra program did not constitute knowledge of dishonesty or fraud on

the part of Ross until 2011 when Fifth Third promptly filed its Notice of Loss based upon knowledge of a of a loss of a type covered by the Bonds.

36. Requires no answer.

37. The allegations contained in Paragraph 37 refer to a written document that speaks for itself and Fifth Third denies the allegations of Paragraph 37 to the extent they are inconsistent therewith. Fifth Third denies knowledge of Ross' dishonesty in connection with the referenced transfer of $2 million until 2011 when Fifth Third discovered Ross' dishonest and fraudulent acts. To the extent that Paragraph 37 alleges that Fifth Third had knowledge of dishonesty or fraud in connection with the referenced transfer of funds, Fifth Third denies the allegations of Paragraph 37.

38. The allegations contained in Paragraph 38 refer to a written document that speaks for itself and Fifth Third denies the allegations of Paragraph 38 to the extent that they are inconsistent therewith. Fifth Third denies that the referenced memo was published by an "executive officer" of Fifth Third. Fifth Third further answers that Ross diverted any inquiries into the matters addressed in the memo by alleging to his superiors at Fifth Third that any fraud which had occurred in LIPF II had been due to the malfeasance of its former CFO, Ira Brody, and that Fifth Third's customer, Concord, had taken full responsibility and agreed to make Fifth Third whole for any fund shortfall in LIPF II.

39. Fifth Third admits that RLI first applied for insurance from Fifth Third for the Bond term commencing July 1, 2009. Fifth Third further admits that the conduct alleged against Concord's former CFO, Ira Brody, was not disclosed to RLI prior to the issuance of the 1st Excess Bond or 2nd Excess Bond as no disclosure was required or applicable. To the extent

that Paragraph 39 alleges that Fifth Third had or withheld knowledge of dishonesty or fraud, Fifth Third denies the allegations of Paragraph 39.

40. Fifth Third admits that the 1st Excess Bond and 2nd Excess Bond are "claims made" policies and apply to a loss of a type covered by the Bonds discovered during the Bond Period. Fifth Third denies that it knew about Ross' dishonesty or fraudulent conduct until 2011. To the extent that Paragraph 40 alleges that Fifth Third had knowledge prior to 2011 of a loss of a type covered by the Bonds, Fifth Third denies the allegations of Paragraph 40.

41. Fifth Third denies that RLI is entitled to the relief requested or that discovery occurred prior to the inception of the Bonds.

## COUNT II: DECLARATORY JUDGMENT
## ANY CLAIM RELATED TO ROSS' ALLEGED DISHONESTY IS UNTIMELY

42. Fifth Third incorporates its answers to Paragraphs 1 through 41 as though fully stated herein.

43. In answer to the allegations contained in Paragraph 43, Fifth Third states that Section 5 of the Primary Bond speaks for itself. By way of further answer, Fifth Third states that the time periods set forth in Section 5 of the Primary Bond are triggered upon discovery of a loss of a type covered by the Bonds.

44. Fifth Third admits the allegations contained in Paragraph 44 and by way of further answer states that it has supplemented the Proof of Loss on numerous occasions since October 14, 2011, with additional information and documents in support of its claim.

45. Fifth Third admits that Fifth Third and RLI entered into the Tolling Agreement which agreement speaks for itself. By way of further answer, Fifth Third states that the Tolling Agreement specifically provides for Fifth Third's right to continue to assert its claim based upon

its discovery of a loss of a type covered by the Bonds as referenced in the February 8, 2011, Notice of Claim referenced above.

46.     Fifth Third denies the allegations contained in Paragraph 46 for the reason said allegations are untrue. Fifth Third acquired knowledge of Ross' dishonest conduct in 2011 and its claim is, therefore, timely.

47.     Fifth Third admits a "Summons with Notice" was apparently filed on May 28, 2010, in New York State Court. Fifth Third denies that such filing, which does not require nor allow for an answer and alleges only third-party claims, provided Fifth Third with notice of a claim for loss which would constitute a type of loss covered by the Bonds or otherwise required reporting to Fifth Third's insurers under the Bonds. Fifth Third denies that RLI's characterization that its "legal department" was aware of the Summons in June of 2010. Further, Fifth Third denies that notice of a legal proceeding constitutes discovery under Section 5 of the Primary Bond given that General Agreement F of the Primary Bond specifically provides otherwise.

48.     Fifth Third denies that RLI is entitled to declaration from this Court that Fifth Third's claim is untimely or that RLI owes no coverage obligation to Fifth Third.

**WHEREFORE**, Fifth Third requests the entry of a judgment in its favor against RLI declaring that RLI owes coverage to Fifth Third in payment of its claims and for any other relief the Court deems necessary and appropriate.

## AFFIRMATIVE DEFENSES

Fifth Third hereby states the following as its Affirmative Defenses to Plaintiff, RLI's Complaint:

1. To the extent to which any and all matters of affirmative defenses are set forth in the preceding Answer above, same are hereby incorporated by reference as though fully set forth at length herein.

2. Any assertion by RLI that notice was untimely cannot serve as the basis for denial of Fifth Third's claim for the reason that RLI cannot demonstrate prejudice resulting from any alleged untimely notice.

3. Any assertion by RLI that Fifth Third's claim is barred by a limitations period within the Bonds must be denied for the reason that any limitations period contained in the Bonds is unenforceable.

4. RLI's claims with respect to untimely notice or commencement of legal proceedings are based upon Bond provisions which require interpretation or construction with respect to other terms of the Bond and any ambiguity or issue of interpretation or construction must be construed against RLI.

5. RLI's claims that the losses asserted by Fifth Third were sustained in prior years and are, therefore, untimely are improper as the Bonds are claims-made policies.

6. RLI is estopped from claiming that dishonesty or fraud which occurred prior to July 1, 2010, bars Fifth Third from asserting claims under the Bonds for the reason that RLI specifically claims that Ross did not act dishonestly.

7. Section 3(b) of the Bonds does not require Fifth Third to provide notice of a third-party claim unless such claim would result in a loss of a type covered by the Bonds and therefore the "Summons with Notice", or other third-party claim, does not constitute discovery under the Bonds.

8. RLI's assertion that Section 3(b) of the Bonds provides that notice of a third-party claim constitutes discovery would render coverage under the Bonds illusory.

9. RLI's claims are barred by waiver.

10. RLI's claims are barred by estoppel.

11. RLI's claims are barred by laches.

12. Defendant hereby reserves the right to raise, plead and amend its Affirmative Defenses to include any other affirmative defenses or other matters of defense, counterclaim, cross-claims, or claims against third parties, which become known to it through the course of discovery, further investigation or otherwise, or as further facts and circumstances may disclose and warrant, up to the time of trial.

## **FIRST AMENDED** COUNTERCLAIM WITH JURY DEMAND REQUESTED HEREIN

Plaintiff Fifth Third Bancorp ("Fifth Third") for its First Amended Counterclaim against Defendant RLI Insurance Company, states as follows:

### INTRODUCTION AND SUMMARY

1. Fifth Third filed its Notice of Claim of a covered loss under the Bonds on February 8, 2011, promptly after discovering that Ross had received a payment by way of a wire transfer in the amount of $75,100 on September 12, 2008, from an insurance agency affiliated with Concord Insider Edward Netherland.

2. Further forensic investigation revealed that the wire transferred funds were generated by an Ultra loan funding for an insured client of Edward Netherland's.

3. Further investigation revealed that Ross and Netherland had been partners in a business entity prior to, and while, Ross was employed at Fifth Third, and that numerous fraudulent Ultra fundings were approved by Ross for insured clients of Edward Netherland.

11

4.  Further investigation revealed that Ross ~~was essentially an imbedded agent for Edward Netherland and the other Concord Insiders and that Ross,~~ in complete abandonment of his duties and loyalties to Fifth Third, colluded with Edward Netherland and the other Concord Insiders in stealing tens of millions of dollars from the Ultra loan facility and other credit facilities established by Fifth Third.

5.  Fifth Third filed its Proof of Loss on October 17, 2011, detailing the dishonest and fraudulent acts of Ross in collusion with the Concord Insiders which directly caused Fifth Third's losses. Since the filing of the Proof of Loss, Fifth Third has supplemented the Proof of Loss on numerous occasions with additional documents, information and evidence detailing further dishonest and fraudulent acts by Ross in collusion with the Concord Insiders and benefits which Ross received and/or intended to participate in based on his collusion with the Concord Insiders.

6.  Notwithstanding the overwhelming evidence submitted by Fifth Third, RLI denies that Fifth Third has established any dishonesty on the part of Ross (while simultaneously asserting its position that Fifth Third somehow knew of Ross' dishonesty – which RLI claims does not exist – prior to the inception of the Bonds). RLI's refusal to acknowledge Fifth Third's claim has required the filing of this action.

**MATTHEW ROSS' DISHONEST AND FRAUDULENT ACTS**

7.  During his employment with Fifth Third Bank, Ross committed dishonest and fraudulent acts within the meaning of the Bonds, including without limitation:

    a.  Ross failed to disclose a pre-existing and continuing financial and business relationship with Edward Netherland ("Netherland") whom Ross brought to Fifth Third Bank as a customer;

12

  b. Ross caused Fifth Third Bank to fund fraudulent loan facilities for the benefit of Netherland, InsCap Management LLC, and its affiliated entities ("InsCap") and other persons affiliated with InsCap;

  c. Ross proposed that Fifth Third Bank fund a credit facility designated as "LIPF II" to provide life insurance premium financing for use in the marketing, origination and sale of InsCap's "Ultra" insurance program. In securing Fifth Third Bank's credit approval, Ross made fraudulent misrepresentations to Fifth Third's management, including without limitation, that Fifth Third Bank's interests would be protected by ~~"market"~~ valuations of the policies by Life Asset Group and that the servicing agent, LaSalle Bank, would serve as a fiduciary and be liable for losses stemming from "unacceptable" fundings under the Ultra program. Ross knew that these representations as to the "protections" provided to Fifth Third Bank under the Ultra program were not part of the program's design or structure, which was compelled by InsCap and to which Ross agreed;

  d. Ross concealed from Fifth Third Bank management the close affiliation between InsCap and Life Asset Group and its owner, Gary Brecka, and subsequently misrepresented to Fifth Third Bank management that Life Asset Group would be replaced with a different valuation provider;

  ~~Ross colluded with InsCap and its principals in perpetrating fraud upon Fifth Third bank by creating a program ("Ultra") which was not viable and could not generate revenues without the use of fraudulent valuations and fee payments which resulted in Fifth Third Bank's loans being substantially under-collateralized by actual policy values~~;

  e. Ross ~~further~~ colluded with InsCap and its principals, including without limitation, Edward Netherland, Harish Raghavan and Ira Brody in perpetrating fraud upon Fifth

13

Third Bank by creating and by failing to disclose fraudulent documentation used to secure Ultra loans funded by Fifth Third Bank;

  f.  In collusion with InsCap's principals, Ross permitted the payment of fraudulent "credit fees" and other fraudulent payments from Fifth Third Bank fundings in the Ultra program for the benefit of InsCap's principals'

  g.  In collusion with InsCap's principals, Ross funded advances for the stated purpose of purchasing life insurance policies as collateral for loans when in fact no life insurance policies were purchased and the required collateral to support the loans did not exist;

  h.  Ross conspired with InsCap's principals to create and furnish to Fifth Third Bank fraudulent financial reporting statements regarding the status of collateral in the LIPF II credit facility;

  i.  Ross colluded with InsCap's principals in the conversion of $2 million from an Ultra funding and misrepresented to Fifth Third Bank that the converted $2 million belonged to an InsCap principal and would serve as collateral for additional funds advanced by Fifth Third Bank to InsCap;

  j.  Ross failed to disclose, on a continuing and systematic basis, fraud occurring in connection with fundings from the LIPF II credit facility and concealed his role in the fraud thereby causing Fifth Third Bank to continue fundings under the LIPF II credit facility and increasing the losses sustained by Fifth Third Bank; and

  k.  Ross maintained ongoing financial business and personal transactions with InsCap principals, including Netherland, before, during and after the term of the LIPF II credit facility without disclosing such transactions to Fifth Third Bank.

14

**FINANCIAL BENEFIT**

8. In committing dishonest and fraudulent acts in collusion with, and for the benefit of, InsCap and its principals and affiliates, Ross intended to, and in fact did receive, substantial financial benefits including, without limitation:

    a. Receipt of the amount of $75,100 which was generated from the proceeds of an Ultra funding through the LIPF II credit facility which funding was approved by Ross;

    b. Upon information and belief, Ross intended to receive and, in fact received, substantial financial benefits from "off the books" financial transactions with Netherland and other principals of InsCap including a $20,000 payment which Ross made to Netherland in 2007 shortly before the establishment of the LIPF II credit facility;

    c. Ross received numerous in-kind and personal entertainment benefits all of which were paid from the excessive payments and benefits provided to InsCap and its principals out of the fraudulent fundings under the LIPF II credit facility and other InsCap credit facilities which were overseen by Ross;

    d. Ross funded payments on InsCap's credit cards from InsCap's line of credit, which credit card charges included the payment for benefits received by Ross and which InsCap paid on Ross's behalf, all of which were concealed by Ross from Fifth Third Bank; and

    e. Upon information and belief, Ross received additional financial benefits as a result of his dishonest and fraudulent acts.

**LOSSES**

9. The total amount of the loss sustained by Fifth Third is in excess of $100 million and exceeds the policy limits of liability under the Bonds.

**ADDITIONAL FACTS PERTINENT TO COVERAGE**

10. Notice of loss was given to Defendant on February 8, 2011, timely upon discovery of a covered loss under the Bonds.

11. Fifth Third submitted a timely sworn Proof of Loss to RLI on October 17, 2011, and have supplemented the Proof of Loss since that date with additional information and documents on numerous occasions, including the providing of hundreds of thousands of documents in electronic form at considerable expense to Fifth Third.

12. Fifth Third has conducted a detailed investigation of the fraud perpetrated on Fifth Third Bank by InsCap and Ross' involvement in that fraud, and have furnished RLI with the results of that investigation and otherwise fully cooperated with RLI and fully responded to all requests by RLI for information which Fifth Third is able to provide.

13. RLI has failed to investigate the claim in a reasonable or appropriate time or manner.

14. RLI has maintained that Fifth Third has failed to demonstrate that Ross committed dishonest or fraudulent acts within the meaning of the Bonds despite the overwhelming evidence submitted by Fifth Third supporting its claims of such dishonesty and fraudulent acts.

15. RLI has failed to advance payments for claims expenses to Fifth Third as required by the Bonds.

16. The losses constitute recoverable losses under the Bonds up to the full aggregate policy limits of the liability of the Bonds.

17. All of the elements, obligations and conditions precedent required under the Bonds have been met or performed.

16

## COUNT I
## BREACH OF CONTRACT

18. Fifth Third hereby adopts, incorporates and reiterates all of the preceding Paragraphs of this Complaint, as if fully set forth herein.

19. Losses exceeding the policy limits of liability under the Bonds have been incurred.

20. RLI has breached its contract as set forth in the Bonds by failing to pay any of the covered losses under the Bonds.

21. RLI has acted in bad faith in breaching its contractual obligations to pay Fifth Third under the Bonds by failing to acknowledge the overwhelming evidence of dishonest and fraudulent acts submitted by Fifth Third in support of its claims.

22. As a direct and proximate result of this breach of contract, RLI remains indebted to Fifth Third for its insured losses in the full amount of the policy limits under the Bonds.

WHEREFORE, Fifth Third, Counter-Plaintiff herein, requests the entry of judgment in its favor against RLI, Counter-Defendant herein, in an amount in excess of $75,000 up to the policy limits of the Bonds, plus pre-judgment interest and reasonable attorney fees and other relief the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Fifth Third, Defendant and Counter-Plaintiff herein, hereby demands a trial by jury for all issues so triable.

Dated: _____, 2016

                                      Respectfully submitted,

                                      _____
Mark J. Byrne (0029243)
Kenneth F. Seibel (0025168)
Jacobs Kleinman Seibel & McNally Co. L.P.A.
30 Garfield Place, #905
Telephone: 513-381-6600
Facsimile: 513-381-4150
mbyrne@jksmlaw.com
kseibel@jksmlaw.com
**COUNSEL FOR DEFENDANT**

Charles E. Turnbull
Lawrence M. Scott
Marc D. Kaszubski
12900 Hall Rd., Suite 350
Sterling Heights, MI 48313
586-726-1000
Fax: 586-726-1560
cturnbull@orlaw.com
cott@orlaw.com
mkaszubski@orlaw.com
**ADMITTED PRO HAC VICE**

David Halbreich
Traci Rea
Douglas Widin
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213 457 8033
Facsimile: 213 457 8080
dhalbreich@reedsmith.com
dwidin@reedsmith.com
trea@reedsmith.com
**ADMITTED PRO HAC VICE**