**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| RLI INSURANCE CO., | Case No. 1:14-cv-802 |
| Plaintiff | Beckwith, J. |
| v. | Bowman, M.J. |
| FIFTH THIRD BANKCORP, | |
| Defendant. | |

............................................................................

| | |
|---|---|
| FIFTH THIRD BANCORP, et al., | Case No. 1:14-cv-869 |
| Plaintiffs, | Beckwith, J. |
| v. | Bowman, M.J. |
| CERTAIN UNDERWRITERS AT LLOYD'S, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

The above two cases initially were consolidated solely for purposes of discovery and pretrial proceedings. On January 9, 2017, the case was reassigned to U.S. District Judge Timothy S. Black for all further proceedings. Although the cases were previously set for trial on different dates, (*see* Docs. 27, 70 in Case No. 14-802, Docs. 33, 77 in Case No. 14-869), Judge Black's most recent order sets the both cases for trial on October 23, 2017.[1]

---

[1]RLI previously opposed consolidation of the cases for trial.

Currently before the undersigned are three extensively briefed motions.[2] Two of the motions have been filed by Fifth Third to amend its pleadings in both Case No. 1:14-cv-869, and in Case No. 1:14-cv-802. For the convenience of this Court, those two motions will be addressed by separate Order. This Order will discuss the third pending motion – a Motion for a Protective Order filed by a group of insurers in Case No. 1:14-cv-869.

I. Background

The background of the two related cases has been summarized in prior orders, but is repeated herein for the convenience of this Court.

Case No. 1:14-cv-802 was first filed by RLI Insurance Company ("RLI"), one of several insurers participating in a financial bond policy issued to Fifth Third Bancorp ("Fifth Third"). RLI's complaint seeks a declaratory judgment that it owes nothing under its bond due to the fact that Fifth Third was aware of the loss prior to the purchase of the bond, and failed to timely present its claim. Fifth Third filed a counterclaim for breach of contract, seeking coverage under the bond. A month after RLI initiated its declaratory judgment action, Fifth Third filed Case No. 14-cv-869 against a number of other insurers that also issued and/or participated in additional financial bonds purchased by Fifth Third, and under which Fifth Third also seeks to recover.

Both cases arise from the actions of a Fifth Third loan officer, Matthew Ross, who was formerly employed in the bank's structured finance group. Fifth Third alleges that it has suffered losses in excess of $100 million due to Mr. Ross's misconduct, exceeding the policy limits of all of the financial bonds issued by the various entities. As Senior District Judge Beckwith previously noted in consolidating the two cases for pretrial

---

[2]Approximately 1200 pages have been filed in the electronic record pertaining to these three motions alone, not including additional pages filed seeking extensions of briefing time and/or permission to file certain documents under seal.

2

proceedings, the Defendants in Case No. 14-cv-869 "raise many defenses similar to those raised by RLI, such as lack of timely notice of loss, and Fifth Third's discovery of the fraudulent conduct prior to the inception of the policy period." (Case No. 1:14-cv-802, Doc. 27 at 3). In both suits, Fifth Third seeks no damages other than those recoverable under the alleged breach of contract claims, the "insured losses" up to the policy limits. However, Fifth Third has suggested that it is likely to seek an award of attorney's fees under Ohio law, assuming that it can demonstrate that the Insurers acted in bad faith in denying coverage.

On March 12, 2015, the Court entered an initial joint Calendar Order for both cases, providing a September 30, 2015 deadline for motions to amend the pleadings. While that deadline was not amended, other pretrial deadlines, including deadlines relating to discovery and the filing of dispositive motions, have been repeatedly extended since entry of that initial order. In the Court's most recent Calendar Order of February 10, 2017, the last day on which either party may serve written discovery is April 14, 2017, with any discovery-related motions to be filed by May 15, 2017, which also marks the close of discovery. The dispositive motion deadline, for motions that pertain to the underlying breach of contract claim, is June 3, 2017.

On July 27, 2016, the undersigned granted the motion of a group of insurers (hereinafter "Insurers") that sought bifurcation of discovery on Fifth Third's bad faith allegations.[3] Judge Beckwith overruled Fifth Third's objections to that Order, and the stay of discovery related to "bad faith" allegations remains in effect through at least June 3, 2017.

---

[3] Fifth Third's "bad faith"" allegations are wholly included in its breach of contract claim; Fifth Third has never pleaded a separate and distinct tort claim for bad faith. Although Fifth Third previously expressed an intent to amend to add a separate bad faith claim, (see Doc. 64 at 10, n. 6), its current motions to amend its pleadings do not attempt to do so.

3

The Insurers who sought and obtained the earlier bifurcation order have now filed a motion seeking a protective order to prevent Fifth Third from obtaining discovery that they believe exceeds the scope of the bifurcation order. Fifth Third insists that the contested discovery is relevant to the underlying breach of contract claim, independent of any relevance to its derivative bad faith allegations. For the reasons discussed below, I conclude that the Insurers are entitled to most, but not all, of the protection that they seek.[4]

## II. Analysis of the Motion for Protective Order

On January 23, 2017, Defendants Certain Underwriters at Lloyd's subscribing to Policy Numbers B0509QA048710 and B0509QA051310 (Lloyd's Syndicates 2488 ("ACE"), 2007 ("Novae"), 1182 ("Talbot"), and 1084 ("Chaucer"), collectively "Lloyds"); AXIS Insurance Company ("AXIS"); and Federal Insurance Company ("Federal") (Lloyd's, AXIS and Federal are collectively referred to as "Underwriters"), filed a motion seeking a protective order concerning identical Rule 30(b)(6) Deposition Notices served by Fifth Third Bancorp and Fifth Third Bank (collectively "Fifth Third") on each of the Lloyd's Syndicates, AXIS and Federal. In part, the Underwriters seek an order striking Topic Nos. 1-6, 11-12, and 14-17 from the 30(b)(6) Notices. (Doc 98). On January 26, 2017, Continental Insurance Company, Fidelity and Deposit Insurance Company of Maryland, and St. Paul Mercury Insurance Company (collectively, the "Second Excess Insurance Carriers") joined the Underwriters' motion as to the Rule 30(b)(6) Notices, based upon the fact that Fifth Third served the Second Excess Insurance Carriers with

---

[4]The Underwriters point out that Fifth Third spends much of its brief "arguing in favor of a non-existent motion to compel documents from Underwriters." (Doc. 105 at 6). The Underwriters urge this Court to ignore Fifth Third's "procedurally improper" arguments. (Id.) Technically, the Underwriters are correct, in that Fifth Third has not cross-moved for relief. Therefore, arguments that primarily challenge the Insurers' claims of attorney-client or work product privileges in productions of documents will not be addressed. On the other hand, to the extent that Fifth Third's arguments overlap with the Rule 30(b)(6) Topics as to which the Underwriters seek a protective order, the arguments have been fully considered.

4

virtually identical Notices, including topics on which the Second Excess Insurance Carriers believe to be improper expansions of discovery into bad faith. (Doc. 99).

For the convenience of this Court, the Underwriters and the Second Excess Insurance Carriers are collectively referred to as "the Insurers" where their positions align in favor of the requested protective order. Because the Second Excess Insurance Carriers have joined the motion only in part, however, the Court will separately address the portion of the Underwriters' motion that the Second Excess Insurance Carriers have not joined.

### A. The Scope of the Existing Bifurcation Order and Stay

To place the current dispute in context, it is necessary to review this Court's prior Memorandum Order bifurcating discovery. In that Order, the undersigned wrote:

> Based upon the referenced allegation of bad faith, Fifth Third seeks very broad discovery of many documents that otherwise would be subject to privilege *and/or potentially irrelevant to the underlying breach of contract claim*. The Insurers' motions seek either a protective order or a stay and bifurcation of discovery that would include the production of claims files, including otherwise privileged material, RLI's attorney-client communications, privileged communications with other insurers, and fee bills for services rendered by outside counsel. In addition, the Insurers seek protection from disclosure to Fifth Third of their internal reserves related to the Fifth Third Claim, and object to disclosure of claims submitted by other insureds over a four-year period.

(Case No. 1:14-cv-802, Doc. 62 at 5-6, emphasis added). Ultimately, the undersigned agreed with the Insurers that

> [A] stay of discovery and bifurcation on any bad faith issues… is advisable in the above-captioned cases. In addition to the privilege issue, the undersigned is persuaded that a bifurcation of discovery on any "bad faith" issues furthers the interests of judicial economy. Thus, the undersigned will grant the Insurers' motions to stay and/or bifurcate discovery on the bad faith issues until at least following the filing of any dispositive motions on the underlying breach of contract claims. *Accord Warren v. Federal Ins. Co.*, 358 Fed. Appx. 670 at *6 (6th Cir. 2009) (affirming bifurcation with stay of discovery on bad faith claim); *Smith v. Allstate Insur. Co.*, 403 F.3d 401 (6th Cir. 2005) (affirming stay of discovery on bad faith claim

5

while contract claim was pending); *Ferro Corp. v. Continental Cas. Co.*, 2008 WL 5705575 (N.D. Ohio Jan. 7, 2008) (finding bifurcation of discovery and trial to be appropriate in case involving numerous lawsuits and coverage claims against multiple insurers; *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 4365695 (S.D. Ohio, Dec. 12, 2007) (affirming order of magistrate judge to bifurcate discovery and trial on bad faith claim that magistrate judge deemed was not an independent cause of action); *Libbey Inc. v. Factory Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 45160 (N.D. Ohio June 21, 2007) (bifurcating discovery and trial on bad faith claim).

Although the Insurers also seek bifurcation of any bad faith issues for purposes of trial, that issue is reserved to the presiding trial judge. It is likely that the trial judge will be in a better position to review the potential bifurcation or consolidation of trial concerning bad faith issues following the disposition of any dispositive motions on the underlying breach of contract claims. Therefore, the undersigned will deny, without prejudice to renew, that portion of the Insurers' motion.

In objecting to the proposed bifurcation of discovery, Fifth Third makes much of the fact that in the parties' Rule 26(f) discovery plans, the Insurers affirmatively agreed that discovery would need to be conducted on all issues raised, and that discovery need not be bifurcated. Likewise, the issue of bifurcation did not come up during initial pretrial conferences. Fifth Third also complains that RLI already has engaged in some discovery concerning the issue of bad faith, including a portion of the discovery served by RLI on Fifth Third, and therefore should be "estopped from refusing to participate" in Fifth Third's attempt to delve more deeply into issues relating to bad faith. Having examined the record, the undersigned does not agree. Fifth Third significantly overstates the amount of "bad faith" discovery conducted to date, as well as the scope of the Insurers' alleged Rule 26(f) "agreement." Viewing the course of this litigation as a whole, the undersigned finds the parties' prior Rule 26(f) agreements should not be used to foreclose the extremely broad "bad faith" discovery sought by Fifth Third at this point in time.

The Insurers argue that if Fifth Third cannot prove its underlying breach of contract claims in this case, then no separate action for bad faith can be maintained by Fifth Third. Although the final arbiter of claims and defenses will be the trial judge assuming that the parties file dispositive motions, the undersigned finds the Insurers' argument to be a persuasive factor weighing in favor of bifurcation of discovery at this stage.

*****

Millions of pages have already been exchanged between the parties on the breach of contract claim (with limited bad faith overlap) to date. The parties already have sought the intervention of this Court to resolve discovery-related disputes. The complexity of discovery to date, coupled with the firm dispositive motion deadline of October 3, 2016, also favors

> staying the extremely broad expansion of discovery that Fifth Third seeks to support its "bad faith" allegations.

(*Id.*, at 6-9, internal footnotes omitted).

On December 29, 2016, Judge Beckwith overruled Fifth Third's objections to the Order, agreeing with the stay of discovery on Fifth Third's bad faith allegations, and that Fifth Third was not entitled to discovery of "privileged attorney-client materials, work product materials, and claims file materials." (Doc. 81 at 3, PageID 1139).  In finding no clear error that would require modification of any portion of the Order, Judge Beckwith determined that the undersigned magistrate judge had "applied and analyzed the facts under the appropriate standard of law to determine whether bifurcation would further the purposes of Fed. R. Civ. P. 42(b)." (Doc. 82 at PageID 1140).

**B. Whether Fifth Third's Rule 30(b)(6) Topics Fall Within the Existing Stay**

In their motion, the Insurers argue that Topics 1-6, 11-12, and 14-15 in Fifth Third's 30(b)(6) Notices seek testimony that is precluded by the existing stay of discovery on bad faith issues.  In its response in opposition, Fifth Third maintains that the existing stay should be viewed as precluding discovery at this phase <u>only</u> as to privileged attorney-client materials, consistent with *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001).

Although the *Boone* holding was focused on the disclosure of otherwise privileged materials when a separate bad faith claim is alleged, *Boone* was not a case in which discovery had been bifurcated, and the undersigned's July 27, 2016 Memorandum Order is not limited in the manner that Fifth Third suggests.  Instead, the bifurcation order sought to stay <u>all</u> discovery on bad faith.  The bifurcation and stay was imposed in this very complex insurance case in part for reasons of judicial economy

7

under Rule 42(b).[5] The factors previously considered were not only the avoidance of prejudice, which could occur through disclosure of otherwise privileged information, but also convenience, expediency, and economy. *See* Rule 42(b).

Not surprisingly given the high dollar value of the bonds at issue, discovery to date has included the exchange of millions of pages on the breach of contract claims alone, with relatively little overlap with bad faith issues. This Court has been called upon to resolve several discovery-related disputes, but continues to believe that those disputes would be greater without the existing stay.[6] As the presiding district judge has already upheld the broad stay and bifurcation order, the undersigned declines to reconsider the scope of the July 2016 Order. Reviewing Fifth Third's requests in light of that Order, the undersigned finds the requested protective order to be appropriate as to most of the disputed Topics in the Rule 30(b)(6) Notices.

The Insurers generally argue that all of the contested Topics are relevant *only* to bad faith allegations. Fifth Third argues that the same Topics are also relevant to the underlying breach of contract claim.

For example, Fifth Third seeks a great deal of information that relates to the drafting of the Bonds, as well as general claims "handling" practices by all Insurers. Topics 1-5 in particular seek a witness or witnesses to testify about every aspect of the "underwriting, renewal, or issuance" of the Bonds. (*See* 98-2 at 6-8). The precise relevance of the broadest reading of the identified Topics is not clear to the Court. Fifth

---

[5]Rule 42(b) speaks to the bifurcation of (or consolidation of) claims for trial, but the same factors were considered in the bifurcation of discovery in this case. Although the Court granted a stay and bifurcation of discovery on bad faith allegations, the Court denied the Insurers' motion to bifurcate trial, without prejudice to the Insurers' right to renew that portion of their motion before the trial judge.
[6]In Fifth Third's objections to the July 2016 order, Fifth Third argued the opposite – that more discovery disputes like the instant one would ensue based upon the parties' disagreement as to whether discovery relevant to bad faith allegations might also be relevant to the underlying breach of contract claim. (Doc. 64 at 14). However, the presiding district judge rejected Fifth Third's position and concurred with the undersigned's analysis that overall, judicial economy favored bifurcation.

Third has never alleged any ambiguity in the contractual language. Instead, the primary dispute between the parties hinges upon the timing of the discovery of Fifth Third's loss, and notice of that loss to Fifth Third and to its Insurers.[7] To date, the Court has not been made aware of any issue that relates to any alleged ambiguity in the language of the Bonds.

Absent a showing of *actual* relevance to a claim or defense, it is unclear how general drafting or generic claims "handling" practices (other than limited information responsive to Topics 12(a)–(c))[8] would be pertinent to the issue of whether Fifth Third's claim falls within or outside of the coverage of the respective contracts of insurance. The undersigned is not persuaded by Fifth Third's argument that it is entitled to extremely broad discovery in hopes of finding evidence that would support some new claim of ambiguity or an as-yet unidentified "disputed" term in the Bonds. In the absence of any claim or defense that any of the terms of the Bonds are ambiguous, such parol evidence is irrelevant.

Fifth Third's argument that all of the requested discovery is "*potentially* relevant," (Doc. 101 n.15 at PageID 1788, emphasis added), fails to persuade. Fifth Third hypothesizes that more information could become relevant if Fifth Third eventually can identify any specific term or terms that are ambiguous. But if followed, this type of circular reasoning would allow discovery on any number of irrelevant issues in an endless fishing expedition. Of course, there is little doubt that the drafting of the Bond language and "handling" and processing of Fifth Thirds' claim by the Insurers may be relevant to Fifth Third's bad faith allegations. However, in light of the existing bifurcation

---

[7]The Lloyds insurers rely heavily upon facts alleged in their letters of April 23, 2014 and August 6, 2014.
[8]*See infra* at 11-12.

9

order, the relevancy of discovery on those derivative allegations will be considered only after resolution of the underlying breach of contract dispute.

That said, to the extent that portions of Topics 1-5 may be construed as seeking information about the Insurers' affirmative defenses concerning the discovery and notice provisions of the Bonds, the Insurers are not entitled to a protective order. For example, portions of Topics 2, 3, and 5 appear to seek relevant information about the notice and discovery provisions.

With respect to other specific Topics as to which the Insurers seek a protective order, Topic 6 seeks "claims handling, investigation, adjustment or determination of coverage for claims submitted by other …insureds under any Financial Institution Bonds…or any other type of bond or policy that provide the same or similar coverage as the Bond or Prior Bonds…." Fifth Third has failed to demonstrate the relevance of this information to the underlying breach of contract claim. Therefore, the Insurers need not produce a witness to respond to Topic 6.

Topic 11 seeks someone to testify about the "organizational structure of the department(s) or group(s) within [Insurer] that had or have any role or responsibility in connection with the adjustment, handling, processing, review, investigation, or evaluation of the Claim, including the identity and role of each person in such department(s) or group(s) who had any role or responsibility in connection with the Claim," Fifth Third contends the information is "critical…to discern where and how the Insurers' files may be kept and to identify individuals that may possess potentially discoverable information." (Doc. 101 at PageID 1779). Limited to the identities and roles and responsibilities of persons who adjusted, handled, processed, reviewed,

10

investigated, or evaluated the claim(s) at issue, Fifth Third is entitled to testimony on this topic.

In Topic 12, Fifth Third seeks testimony about the Insurers' claims files. More specifically, Topics 12(a) through (c) seek testimony about the Insurers' "handling, adjusting, processing, reviewing, investigating, and/or evaluation and assessment of the Claim, including but not limited to: a. Persons involved; b. Steps or actions taken, claim, or diary notes, decisions made, and bases for those decisions; c. Information learned or obtained." (Doc. 99-1 at PageID 1741). Fifth Third explains that it is seeking "statements and admissions regarding the scope and extent of available insurance coverage, the meaning or the Insurers' construction of the disputed Bond terms, as well as statements regarding the validity and factual underpinnings of the Insurers' defenses to coverage," including statements "that are inconsistent with their litigation positions [that] would establish alternative interpretations of the Bond and/or constitute admissions regarding the Insurers' coverage positions or the scope of coverage." (Doc. 101 at PageID 1770). In support of the relevancy of Topics 12(a)-(c), Fifth Third cites two unpublished cases from Washington and Nevada courts, in which portions of claims files were ordered to be produced as relevant to the insurers' affirmative defenses and/or the underlying coverage issue. *See Teck Metals, Ltd. v. London Market Ins.*, 2010 WL 4813807 at *3 (E.D. Wash. Aug. 25, 2010); *Olin Corp. v. Continental Cas. So.*, 2011 WL 3847140 (D. Nev. Aug. 30, 2011). Similarly here, Fifth Third argues that the claims files are directly relevant to the Insurers' affirmative defenses concerning the timing of Fifth Third's discovery of its loss and notice of its loss. Fifth Third argues that it needs the non-privileged portion of the claims files to understand "the Insurers'

11

expectations, interpretations, understanding and application of the terms and conditions of the Bond." (Doc. 101 at PageID 1780).

While general discovery into the Insurers' "handling" of all claims is not necessarily relevant to any claim or defense at issue (excluding bad faith), the Insurers' will be required to produce a witness for the portion of Topics 12(a)-(c) that relate to non-privileged information that has already been produced in discovery.  In their reply memorandum, the Underwriters state that ACE, AXIS, and Federal have already produced the non-privileged portions of their claims files as well as corresponding privilege logs.  (Doc. 15 at PageID 1991, 1996).  Additionally, the Insurers have agreed to produce a witness on their affirmative defenses, including Topics 7 and 10, which include the "bases for and the principal or material facts and documents supporting any affirmative defenses and/or contention stated in [Insurer's] Answer" as well as the "bases for and the principal or material facts and documents supporting [Insurer's] reservation of rights letters."  (Doc. 99-1, PageID 1740).  Thus, as to non-privileged information in the claims files, Fifth Third has adequately demonstrated the relevance of Topics 12(a)-(c) to the underlying breach of contract claims, and the Insurers' request for a protective order on those Topics will be denied.

For similar reasons, the undersigned will deny in part the Insurers' motion for a protective order on Topics 12(d) and (e), which seek testimony on the Insurers' communications "with Fifth Third, brokers, other insurers, reinsurers, or any other person or entity," and the "scope and nature of the work done by any law firms, accountants, adjusters, consultants, investigators, or any other person or entity retained by [the Insurer]."  To the extent that Topics 12(d)-(e) can be construed as limited to relevant and non-privileged information concerning the Insurers' communications

regarding their discovery and notice defenses, Fifth Third is entitled to discover the requested discovery.

Topic 14 seeks a witness to testify about "claims handling, investigation, adjustment, or assessment manuals, policies, rules, or guidelines that relate to Financial Institution Bonds, Fidelity Bonds, or any other type of bond or policy, or any provisions thereof, that provide the same or similar coverage as the Bond." (Doc. 99-1 at PageID 1741). Fifth Third argues that such information is relevant to show "how the insurer applied the standard language" in the Bonds at issue. (*See* Doc. 101 at PageID 1781)). However, the "straightforward" insurance case on which Fifth Third relies is distinguishable. See *Silgan Containers v. Nat'l Union Fire Ins.*, 2010 WL 5387748 (N.D. Cal. Dec. 21, 2010)(additional internal citations omitted, allowing discovery on "policy interpretation and application issues" and the "nature and origin" of the insured's damages in furtherance of a breach of contract issue, where the plaintiff had alleged that policy terms were ambiguous). Limited inquiry will be permitted only as it relates to the underlying breach of contract claim and affirmative defenses relating to the exact bonds at issue. By contrast, Fifth Third is not entitled to a witness to testify more broadly about manuals, policies, rules, or guidelines that relate to any bonds ever issued by the Insurers for "similar coverage."

Topic 15 seeks testimony concerning the Insurers' "promotion, advertisements, or marketing of Financial Institution Bonds, Fidelity Bonds, or any other type of bond or policy that provides the same or similar coverage as the Bond." (Doc. 99-1 at PageID1741). Fifth Third contends that the relevance of this information to the underlying breach of contract claim goes to "the scope of insurance coverage the Insurers promised and intended to provide," and may show "what risks each insurer

13

believed and/or represented it underwrote." (Doc. 101 at 15). Absent any more specific allegation that any terms are in fact ambiguous, Topic 15 does not appear to be relevant to any claim or defense in the current phase of litigation. Therefore, the Insurers need not produce a witness to testify to Topic 15.

Topic 16 seeks testimony about the "loss reserves" that the Insurers set for the claims at issue. This issue was addressed in the July 2016 Order. Indeed, Fifth Third concedes as much in its response and states that it no longer seeks this information.[9]

In Topic 17, Fifth Thirds seeks a witness able to testify about "all documents produced," which the Insurers argue is either overbroad (to the extent that it seeks someone to testify about the content of all documents) or inappropriate for a deposition topic to the extent it seeks to authenticate documents. In response to the motion, Fifth Third has clarified that topic 17 "relates to the sources of the documents produced and the scope of the Insurers' searches for relevant documents and information." (Doc. 101 at 24). While Underwriters might prefer that Fifth Third seek such information through interrogatories, the Insurers are not entitled to a protective order on this issue.

### C. The Underwriters' Separate Arguments

#### 1. Protection from Duplicate Discovery

In addition to seeking a protective order striking portions of Fifth Third's Rule 30(b)(6) Notices, the Underwriters seek an order requiring Fifth Third to refrain from

---

[9]Citing this now-moot issue by way of example, Fifth Third strongly criticizes the Insurers for "unnecessarily burden[ing] the Court with discovery issues that could have (and should have) been resolved through the good faith meet and confer process" mandated by both Federal and Local Rules of Procedure and by the undersigned's General Standing Order on discovery disputes. (Doc. 101, PageID 1775). The correspondence attached to the Insurers' motion, together with the course of proceedings on prior disputes, confirms that the parties had exchanged multiple communications on the issues presented but appeared to be at an impasse. If Fifth Third believed further communication could have resolved the pending disputes, counsel should have communicated that fact instead of simply reiterating Fifth Third's general disagreement on <u>all</u> disputed topics, and stating that counsel would "review the motion you [intend to] file Monday and respond accordingly." (Doc. 98-2 at PageID 1727). Moreover, Fifth Third remained free to continue to work to narrow and/or resolve the pending issues even after the Insurers filed their motion.

14

seeking duplicative discovery from "non-lead" Lloyd's Syndicates subscribing to the policies at issue: Chaucer, Novac, and Talbot. The Underwriters cite an agreement among counsel made in May 2015 to take "leader-only" discovery for all of the Lloyd's Syndicates from ACE, as the party with primary responsibility on behalf of Lloyd's for investigating claims under the policies. All of the referenced entities are represented by the same counsel, and "have always taken the same coverage position…on behalf of all Underwriters." (Doc. 98-1 at PageID 1706). The Underwriters strongly object to what they perceive as a "harassing" departure from the agreement, to the extent that Fifth Third noticed all four Lloyd's entities separately. Witnesses for the entities are located in London, England, requiring expensive international travel.

In response, Fifth Third states that it will in fact abide by the prior agreement and permit ACE to respond to discovery on behalf of all of the Lloyd's Syndicates, "so long as discovery as to one would be discovery as to all." (Doc. 101 at 22). While both the Underwriters and Fifth Third spend time assigning blame for the failure of counsel to resolve this issue prior to the filing of the Insurers' motion, such assignment of blame concerning a now-moot issue does not serve the interests of the parties, the public, or this Court.

### 2. Costs and Fees Relating to the Motion for Protective Order

The Underwriters seek an award of their costs and fees in filing the motion for protective Order. In light of the rulings made herein, the Underwriters' request will be denied.

### III. Conclusion and Order

Accordingly, **IT IS ORDERED**:

1. The Insurers' motion for a protective order (Doc. 98 in Case No. 1:14-cv-869) is GRANTED IN PART and DENIED IN PART consistent with the above discussion;

2. The Underwriters' separate request for additional protection to prevent duplicative discovery is DENIED AS MOOT, and the request for an award of fees costs and fees is also DENIED.

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge